Ignacio Roca, Petitioner, *v.* Insular Board of Elections, Respondent.—Arturo Lluberas, Intervenor.

No. 240.   Argued June 3, 1926.—Decided July 7, 1926.

*Bolívar Pagán* for the petitioner. *José Martínez Dávila* for the respondent. *Rafael Cuevas Zequeira* for the intervenor.

Mr. Chief Justice Del Toro delivered the opinion of the court.

Ignacio Roca, candidate for Mayor of Yauco of the "Socialista" and "Constitucional Histórico" parties at the last general election held in Porto Rico, petitioned this court for a writ of mandamus directed to the Insular Board of Elections and ordering that all ballots cast in the electoral precinct of Yauco be recounted and adjudicated to the corresponding parties and candidates.

Before taking any definite action the court ordered a hearing. The petitioner, the Insular Board of Elections, and Arturo Lluberas, elected Mayor of Yauco at the said general election, appeared by their respective attorneys.

Mayor Lluberas moved that the petition be denied on the grounds that it did not set up sufficient facts and that it showed on its face that the petitioner had an adequate remedy at law.

The Insular Board of Elections alleged that its duty was limited to a simple arithmetical operation and it had no authority to consider whether or not a ballot should be counted

for a certain candidate, and that therefore it had performed its duty and the petition should be denied.

The petitioner maintained his ground.

Leaving aside the question raised by the intervenor that mandamus does not lie because the petitioner had an adequate remedy in the proceedings for the execution of the judgment recovered by him in mandamus proceedings previously brought, we shall consider and dispose of the main question involved.

The law governing the matter is found in section 89 of the Election Law as amended in 1924, Acts of 1924, Special Session, page 32, which reads as follows:

"The Insular Board of Elections shall canvass the returns of an election by using such poll lists and tally sheets used at such election as may be sent to the General Supervisor of Elections by local election boards as such returns, as follows:

"The said board shall begin the said canvass with the returns from polling place No. 1, of the first precinct of the First Representative District and shall continue the same in the order of the numbers of representative districts until the returns of all polling places of each such district have been canvassed, unless it shall previously unanimously agree to some other order.

"On taking up the returns of each polling place for canvassing the same, the said board shall first examine all protested ballots shown by the tally sheet of such polling place to pertain to the same and shall count or reject such ballots as in its judgment the law may require; and in order to carry out this provision and requirement the said board may open and examine the contents of any envelope or package relating to the election in such polling place, and shall then return all such contents to the envelope or package in which they were found, re-seal the said envelope or package, and place a brief statement on the same, signed by all members of the board present, showing why such envelopes or packages were opened and what ballots or documents were found in the same. The said board shall then add to the total vote cast and counted for each candidate in a polling place, as shown by its tally sheet, the total number of protested votes counted for each such candidate by it. Such added totals shall be taken as the actual total vote of each candidate voted for in each polling place, and

such actual total vote of each candidate in all polling places in which he was voted for at an election shall be taken as the total of all votes received by him at the election to which the same relates; *Provided,* That the Insular Board of Elections shall correct all arithmetical errors found by it in a tally sheet and count said tally sheet as so corrected; *Provided, further,* That the Insular Board of Elections shall, on the request of any member of the said board, count the number of persons who voted in a polling place as shown by its poll lists and change the entry on its tally sheet in that matter to agree with the result of such count; *Provided, further,* That if there is any contradiction shown by the entries on a tally sheet (either as the same was returned by its poll board or as it may have been corrected by the Insular Board of Elections) between the number of persons who voted as shown by the poll lists and the number of ballots found in the ballot box of the polling place to which such tally sheet pertains, or between the number of ballots found in the ballot box and the number of ballots disposed of as shown in its summary, the Insular Board of Elections shall, if such difference is sufficient in itself or when combined with another such difference relating to the vote for the same candidate, to affect his election, recount all ballots of such polling place, correct its tally sheet according to the result of such recount, and adopt such corrected tally sheet as the official tally sheet of such polling place; *Provided, however,* That the Insular Board of Elections shall endorse on such tally sheet a statement signed by all its members present showing the changes so made by it and the reasons why such changes were made; *And provided, further,* That the result of the canvass of an election as declared by the Insular Board of Elections and published by the General Supervisor of Elections shall be final, unless the same shall be contested by a certiorari or other authorized legal proceeding, filed within fifteen days from the date of the publication of the result of such canvass, in a court of competent jurisdiction, and a certiorari proceeding in the District Court of San Juan is hereby authorized in such cases; *And provided, further,* That the Insular Board of Elections shall replace the contents of all envelopes and packages opened by it for the purpose of counting or recounting ballots in the same envelope or package in which they are found, shall re-seal such envelope or package, and shall place on the same a written statement signed by all members of the board present stating why such envelope or package was opened by it and that all contents found in such envelope or package were replaced in the same."

The elections are held by casting ballots. The electors appear in person at the polling places. There is a poll list for each polling place. If the name of the elector appears on the poll list he is given a ballot which the secretly uses for voting and returns to the board. The ballot is deposited in the ballot-box and the fact that the elector cast his vote is recorded on the poll list.

The voting ceases at a fixed hour and the boards of each polling place begin the canvass. Everything is set out in detail in the Act. The ballots are assorted as follows:

"(a) The straight general ballots voted for each party which have not been challenged shall be placed in separate piles by themselves, one such pile of such ballots for each party.

"(b) All straight general ballots which have been challenged shall be placed in a pile by themselves, in only one pile.

"(c) All split general ballots which have not been challenged shall be placed in a pile by themselves, in only one pile.

"(d) All split general ballots which have been challenged shall be placed in a pile by themselves, in only one pile.

"(e) All general ballots which have been protested shall be placed in a pile by themselves, in only one pile.

"(f) All general ballots which for any reason are void shall be placed in a pile by themselves, in only one pile."

The special ballots are then assorted in the same manner. No ballot can be counted for any party or declared void without the agreement of the inspectors of the Unionist and Republican parties and the official observer of the Socialist party, who compose the poll board. If there is no agreement the reason therefor shall be stated and the ballot shall be placed in the pile of protested ballots.

The Act provides in detail for the manner of preparing the tally sheets on which each polling place sets out the result of the voting.

The poll board finishes its work by delivering all of the papers to the local board of elections which in turn forwards them to the General Supervisor of Elections.

After that *partial canvass* the Insular Board of Elec-

tions makes the *general canvass* according to section 89 of the Act.

This is done by using the poll lists and tally sheets, thus attaching full credit to the work done by the poll board, that is, the trial canvass. Only the packages containing the protested ballots are opened and examined. This is something which remained undone awaiting the direct action of the Insular Board. And generally the canvass is thus completed.

The petitioner bases his petition especially on the third proviso of section 89.

After stating the corresponding previous facts the petitioner alleges the following:

"9.—That in compliance with a peremptory writ of mandamus issued by the District Court of San Juan against the said board under its judgment (affirmed on appeal by the Supreme Court) in the civil case of *Roca* v. *Insular Board of Elections,* No. 3607, decided July 30, 1925, the board met on May 17, 1926, to canvass the ballots of the precinct of Yauco by counting the votes in said precinct and recounting the ballots of each of the polling places of the said precinct where there was a contradiction or difference between the number of voters shown by the poll lists and the tally sheets of the respective polling places, and continuing said canvass to a finish, as per allegations 6th, 7th and 8th of the present petition.

"10.—That according to the official returns employed by the said board in the said canvass, the contradictions or differences between the persons who voted at the polling places of the electoral precinct of Yauco for the said candidates, as shown by the corresponding poll lists, and the persons who voted, as shown by the entries on the respective tally sheets, amounted to a combined total of 172 in all the polling places of the said precinct; and that the said differences and contradictions also appeared from the entries on the tally sheets relative to the persons who voted as shown by the poll lists and to the number of ballots found in the ballot-boxes.

"11.—That the differences and contradictions above referred to were found in the electoral colleges numbered 2, 3, 4, 6, 7, 8, 10, 11, 13, 16, 18, 19, 20, 21, 22, 23, 24, 26, 27, 28, 29 and 30 of the said precinct of Yauco and were unanimously accepted by the said board.

"12.—That after the said board had unanimously accepted the said differences and contradictions and taken due note thereof, and in spite of the petition made by its member, Bolívar Pagán, while the said board was making the canvass ordered by the court and while it was, therefore, discharging its official and solemn duty, to the effect that 37 ballots of polling station No. 2, and similar ballots, valid as well on their face and form, and found in the rest of the above mentioned polling places, which ballots, if counted and duly considered, would change the result of the election in such a way as to give the petitioner a majority of 300 votes over Lluberas, the said board refuses to recount and reexamine them by the vote of the members representing the political parties known as 'Unión de Puerto Rico' and 'Republicano Puertorriqueño.' "

Notwithstanding their length and details, the pleadings do not show plainly what took place. However, the parties agreed at the hearing that the real point at issue was whether or not the Insular Board was bound in a similar case not only *to open the packages containing the void ballots and recount them, but also to examine them anew and determine after such examination whether or not they were void.*

The authority that the board may have comes from the third proviso of section 89. The petitioner agreed to this and contended that "recount" does not mean a mere arithmetical operation, but implies an investigation of both quantity and quality.

It must be conceded that there is no express provision of the law under which this case falls. It would have been very easy for the Legislature to say, if that had been its desire, in the third proviso or in another, that if the number of ballots declared void was sufficient to change the result of the election, the board should proceed to examine them anew and determine as to their validity. And it seems strange that it did not, taking into consideration that the Election Law describes every proceeding in detail and prescribes minutely the work to be performed by the bodies that it creates.

By its wording the third proviso covers only cases of *contradiction shown by the entries, or between the number of voters as shown by the poll lists* and the number of ballots found in the ballot-box, or *between the latter number and the number of ballots distributed as shown by the summary of the tally sheets.*

And in such cases of contradiction, if it could affect the result of an election, what does the law order the board to do? *To recount all the ballots of the polling place and modify its tally sheet according to the result of such recount.*

What does "recount" mean? Does it mean to reexamine? Does it mean to open the packages which the law requires the poll board to make up and count the number of ballots contained in each?

Considering the spirit of the law as a whole and how scrupulous the legislators were to fix each detail and each faculty, and in the absence of an express provision, we think that the latter construction is inevitable.

In order that a ballot may be declared void or valid the unanimous consent of the representatives of the three political parties is required.

In counting the ballots there might have been an error which may and should be corrected, but not by the Insular Board which has no power to substitute its judgment for the unanimous judgment of the lawful representatives of the only parties interested in the contest. There is only one case in which the board judges the validity of the ballot itself, that of a protested ballot, which is expressly provided by law.

We may suppose that the local representatives were duly elected and that they were capable and honest. Through the exercise of local authority and having confidence in it and learning from its successes and failures, democracies develop and are established.

Where there is fraud, or when fundamental errors of law

are committed, according to all precedents it is not the Insular Board, but the courts, which must decide the case.

The writ prayed for should be denied.